UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,　　　　　　　　　Case No. 17-cr-0104 (WMW/FLN)

　　　　　　　Plaintiff,
　　　　　　　　　　　　　　　　　　　　　**ORDER ADOPTING REPORT AND**
　v.　　　　　　　　　　　　　　　　　　　**RECOMMENDATION**

Peter Vang a/k/a Little Man,

　　　　　　　Defendant.

---

This matter is before the Court on the July 25, 2017 Report and Recommendation of United States Magistrate Judge Franklin L. Noel, (Dkt. 42), which recommends denying Defendant Peter Vang's motion to suppress physical evidence and motion to suppress Vang's statements. Vang filed timely objections to the R&R. Plaintiff United States of America did not respond to Vang's objections. For the reasons addressed below, the Court overrules Vang's objections and adopts the R&R.

## BACKGROUND

As the relevant factual background and procedural history are addressed in detail in the R&R, the Court need not repeat them at length here. The summary that follows is based on facts that are undisputed for the purpose of the Court's resolution of the issues addressed by Vang's objections to the R&R.

On March 16, 2017, several law enforcement officers conducted surveillance outside a mobile home in Maplewood, Minnesota. The law enforcement officers were at this location to arrest Vang pursuant to a Minnesota Department of Corrections (DOC)

fugitive arrest warrant issued on January 11, 2017. Law enforcement determined Vang's whereabouts by tracking the location of a cellular telephone associated with Vang pursuant to a tracking warrant.

On the morning of March 16, law enforcement officers observed Vang leave the mobile home and enter the driver's side of a silver Chevy Malibu parked outside. Approximately 5 to 10 minutes later, a female passenger entered the Malibu and Vang drove away from the mobile home. The law enforcement officers subsequently executed a high-risk traffic stop by blocking the Malibu on both sides, arrested Vang and his passenger, and secured them in separate squad cars. Before placing Vang in the squad car, DOC Officer Terry Nutter frisked Vang and asked if he possessed any weapons or sharp objects. Vang disclosed that he was carrying a firearm in the back waistband of his pants. Officer Nutter searched Vang's waist and seized a loaded firearm. After both Vang and his passenger were secured, law enforcement officers searched the Malibu and found, among other things, a loaded firearm in the glove compartment, a glass pipe, and a backpack containing methamphetamine. At or near the time of this search, the officers on the scene contacted the Maplewood Police Department (MPD) and requested that the Malibu, which was parked in the middle of a traffic lane, be towed. Officer Anthony Gabriel of the MPD subsequently arrived and arranged to have the Malibu towed and impounded. Because the Malibu had been searched before he arrived, Officer Gabriel did not conduct an inventory search.

The original indictment in this case charges Vang with three offenses: (1) possession with intent to distribute methamphetamine; (2) felon in possession of a

firearm; and (3) carrying and possessing a firearm during, in relation to, and in furtherance of a drug-trafficking crime.[1]  Vang filed several pretrial motions, including a motion to suppress the evidence obtained as a result of the traffic stop, the search of Vang's person, and the search of the Malibu; and a motion to suppress Vang's statement to Officer Nutter that Vang had a firearm in his waistband.  Following an evidentiary hearing on June 7 and June 12, 2017, the magistrate judge issued the pending R&R, which recommends denying Vang's motions to suppress physical evidence and his statement to Officer Nutter.  The R&R concludes that the traffic stop was lawfully executed pursuant to an active arrest warrant, the search of Vang's person was a lawful search incident to arrest, and Vang's statement to Officer Nutter about the firearm in his waistband falls within the public safety exception to the *Miranda* requirement.  The R&R also concludes that the warrantless search of the Malibu was not a valid search incident to arrest, but applies the inevitable discovery doctrine and recommends denying Vang's motion to suppress the evidence obtained from the Malibu.  Vang filed timely objections to the R&R, challenging the R&R's application of the inevitable discovery doctrine.

## ANALYSIS

A party may file written objections to a magistrate judge's proposed findings and recommendations.  28 U.S.C. § 636(b)(1)(C); LR 72.2(b)(1).  The district court reviews *de novo* those portions of the R&R to which a specific objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

---

[1]  The United States obtained a superseding indictment on August 23, 2017, but the superseding indictment appears to have no bearing on the issues addressed in the July 25, 2017 R&R.

magistrate judge." 28 U.S.C. § 636(b)(1); *accord* LR 72.2(b)(3). The district court reviews for clear error those portions of an R&R to which no objections are made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; *United States v. Newton*, 259 F.3d 964, 966 (8th Cir. 2001) (explaining that, absent objections, defendant is not entitled to *de novo* review of R&R); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).

Vang's objections are limited to the R&R's application of the inevitable discovery doctrine with respect to the evidence that the law enforcement officers recovered from the Malibu. "For the inevitable discovery doctrine to apply, there must have been a reasonable probability the evidence would have been discovered in the absence of police misconduct, and the police must have been pursuing a substantial, alternative line of investigation." *United States v. Alvarez-Gonzalez*, 319 F.3d 1070, 1072 (8th Cir. 2003). The government must prove both elements of the doctrine by a preponderance of the evidence. *United States v. Hammons*, 152 F.3d 1025, 1029 (8th Cir. 1998). When applying the inevitable discovery doctrine, "it is important to focus not on what the officers actually did after unlawfully recovering evidence, but on what the officers were reasonably likely to have done had the unlawful recovery not occurred." *United States v. Villalba-Alvarado*, 345 F.3d 1007, 1019 (8th Cir. 2003). Vang argues that neither element of the inevitable discovery doctrine has been proven by a preponderance of the evidence.

As to the first element, Vang argues that there was not a reasonable probability that the evidence would have been discovered because the Malibu "should not have been towed in the first place." According to Vang, the MPD's policies did not require the

Malibu to be towed. Instead, the policies permitted the police to move the Malibu a short distance so as to eliminate the traffic hazard.

MPD policy 502.4 states that "a vehicle *shall be towed* . . . when the community caretaker doctrine would reasonably suggest that the vehicle should be towed," such as when "the vehicle would present a traffic hazard if it were not removed." (Emphasis added.) Here, the record reflects that the Malibu was a traffic hazard because it was parked in the middle of a traffic lane and "was blocking the roadway." Vang does not dispute these facts. MPD policy 502.4 provides three examples of "situations where consideration should be given to leaving a vehicle at the scene in lieu of towing." Two of these situations undisputedly do not exist here. This was not a traffic-related warrant arrest, and the owner of the Malibu (who was not present at the scene of the arrest) did not request that the Malibu be left at the scene.

Vang argues that towing the Malibu was not warranted based on the third example described in MPD policy 502.4—namely, "[s]ituations where the vehicle was not used to further the offense for which the occupant was arrested." Vang offers no basis for disputing the R&R's determination that the "Malibu was used to further Vang's travels while he was a DOC fugitive, the offense for which he was arrested." Even if the Court were to conclude that Vang was *not* using the Malibu in furtherance of evading law enforcement, MPD policy 502.4 merely directs officers to give consideration to leaving a vehicle at the scene of arrest in such situations. Vang cites no MPD policy that either *required* police to move the Malibu in lieu of towing and impounding it or *prohibited* police from towing and impounding the Malibu. As the R&R observes, DOC Officer

Mark Koderick testified at the suppression hearing that there was never any question that after the vehicle was stopped it would have to be towed, and he directed another officer to contact MPD to arrange for the Malibu to be towed.

Vang relies heavily on a different MPD policy—namely, MPD policy 502.2.3—to support his argument that the Malibu should not have been towed. MPD policy 502.2.3 states: "Vehicles that have been towed by or at the direction of the Department should not be driven by police personnel unless it is necessary to move a vehicle a short distance to eliminate a hazard, prevent the obstruction of a fire hydrant or to comply with posted signs." The R&R correctly concludes that this policy is inapplicable here. On its face, MPD policy 502.2.3 governs law enforcement's conduct *after* the MPD has towed and impounded a vehicle. Moreover, when viewed in context, MPD policy 502.2.3 clearly addresses the "responsibilities of those employees storing or impounding a vehicle" involved in a parking or traffic violation. These were not the circumstances at the time of Vang's arrest. Vang's reliance on MPD policy 502.2.3 is misplaced.

Because towing the Malibu was permitted, if not required, pursuant to the MPD's policies, a subsequent vehicle inventory search would have been required. MPD policy 502.5 provides: "All property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form. This includes the trunk and any compartments or containers, even if they are closed and/or locked."

Vang does not directly challenge the MPD vehicle inventory search policy. Rather, according to Vang, law enforcement could have apprehended him when the Malibu was parked, before he drove away. Instead of doing so, Vang argues, law

enforcement conducted a traffic stop as a pretext to search the vehicle. Vang contends that an eventual vehicle inventory search would have been unreasonable in these circumstances because it would have been a pretext for an investigatory search. But Vang's argument lacks legal and factual support. That the "police had an investigative motive . . . does not sour an inventory search." *United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003); *accord United States v. Marshall*, 986 F.2d 1171, 1175-76 (8th Cir. 1993) ("The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity."). And contrary to Vang's pretext argument, the record reflects that the arresting officers made the tactical decision to conduct a high-risk traffic stop to block the Malibu while it was moving for several reasons, including the location of the Malibu, the nature of the immediate surroundings, and the risk that Vang might flee or otherwise pose a danger to others. Vang's pretext argument does not decrease the probability that the challenged evidence would have been discovered during a valid vehicle inventory search pursuant to MPD policy 502.5. *See Alvarez-Gonzalez*, 319 F.3d at 1072.

For these reasons, the record establishes that there was a reasonable probability that the evidence recovered from the Malibu would have been inevitably discovered during the course of a lawful inventory search conducted pursuant to standardized MPD policies without any police misconduct.

The second element of the inevitable discovery doctrine is that "the police must have been pursuing a substantial, alternative line of investigation." *Alvarez-Gonzalez*, 319 F.3d at 1072. This factor "requires that the government prove that there was, at the

time of the search . . . an actual other investigation that would have led to discovery of the otherwise unconstitutionally obtained evidence." *United States v. Garreau*, 735 F. Supp. 2d 1155, 1165 (D.S.D. 2010) (quoting *United States v. Munoz*, 590 F.3d 916, 923-24 (8th Cir. 2010)).

Vang asserts that the "act of towing is ministerial, not investigatory." This argument is misplaced. The towing of the Malibu was not the substantial, alternative line of investigation. Rather, the record undisputedly establishes that law enforcement officers had been actively investigating Vang's fugitive status and potential whereabouts and activities pursuant to a fugitive arrest warrant. *See Garreau*, 735 F. Supp. 2d at 1166 (concluding that the substantial alternative line of investigation element had been satisfied when law enforcement was actively pursuing an investigation into the defendant pursuant to an arrest warrant at the time of the warrantless search). This investigation included questioning individuals about Vang, monitoring and searching Vang's home, monitoring prison telephone calls pertaining to Vang, and obtaining a tracking warrant for a cellular telephone allegedly associated with Vang. Moreover, immediately prior to and independent of the warrantless search of the Malibu, officers had recovered a loaded firearm from Vang's waistband. These facts establish that when the warrantless search of the Malibu occurred, law enforcement officers were actively pursuing a substantial alternative investigation that would have led to the discovery of the evidence seized from the Malibu.

Accordingly, the Court overrules Vang's objections and adopts the R&R's recommendation to deny Vang's motion to suppress the evidence obtained from the

warrantless search of the Malibu.  In addition, having reviewed those portions of the R&R to which no objection has been made, the Court concludes that the R&R is neither clearly erroneous nor contrary to law.

**ORDER**

Based on the R&R, the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Peter Vang's objections to the July 25, 2017 R&R, (Dkt. 44), are **OVERRULED**;

2. The July 25, 2017 R&R, (Dkt. 42), is **ADOPTED**;

3. Vang's motion to suppress evidence, (Dkt. 18), is **DENIED**; and

4. Vang's motion to suppress statements, (Dkt. 19), is **DENIED**.


Dated:  September 27, 2017                    s/Wilhelmina M. Wright
                                              Wilhelmina M. Wright
                                              United States District Judge